BENJAMIN B. WAGNER
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | 2:14-MC-00102-KJM-DAD |
|---|---|
| Plaintiff, | |
| v. | CONSENT JUDGMENT OF FORFEITURE |
| APPROXIMATELY $6,150.00 IN U.S. CURRENCY, and | |
| APPROXIMATELY $9,180.00 IN U.S. CURRENCY, | |
| Defendant. | |

Pursuant to the Stipulation for Consent Judgment of Forfeiture, the Court finds:

1. On March 19, 2014, the Drug Enforcement Administration (hereafter "DEA") seized Approximately $6,150.00 in U.S. Currency (the "Cutcher defendant currency") and Approximately $9,180.00 in U.S. Currency (the "Kaferly defendant currency" and together with the Cutcher defendant currency, collectively, the "defendant currency") from claimants at Sacramento International Airport in Sacramento, California.

2. The DEA commenced administrative forfeiture proceedings, sending direct notice to all known potential claimants and publishing notice to all others. On or about

/////

May 12, 2014, the DEA received claims from Cutcher and Kaferly asserting ownership interests in the defendant currency.

3. The United States represents that it could show at a forfeiture trial that on March 19, 2014, the DEA received information regarding suspicious travel by Cutcher, who was traveling on Southwest Airlines from Los Angeles, CA to Sacramento, CA. DEA agents responded to Sacramento International Airport and observed Cutcher depart the flight and proceed to the terminal exit. A DEA agent displaying his badge, approached Cutcher, identified himself as law enforcement, and asked permission to speak with Cutcher. Cutcher agreed. As the agent spoke with Cutcher, a second agent noticed Kaferly, who had been walking next to Cutcher, continue walking towards the exit. Cutcher told agents that he was traveling from Atlanta and would be staying for "four days." Cutcher said he planned to visit his uncle in Yuba City, CA, and do some gambling. Cutcher told the agent he had one carry-on backpack and one checked bag. The agent asked Cutcher if he could search his backpack, and Cutcher consented.

4. The United States represents that it could also show at a forfeiture trial that when searching Cutcher's backpack, the agent asked Cutcher how much cash he was traveling with and Cutcher said "just under $8,000.00," which was wrapped up in a pair of jeans in the backpack. The agent located several wads of cash within the pockets of a pair of jeans in the backpack. A rough estimate of the cash was between $6,000.00 - $8,000.00. The agent thanked Cutcher for his cooperation, and Cutcher headed for the exit. No additional cash was found in Cutcher's checked bag.

5. The United States represents that it could also show at a forfeiture trial that agents observed Cutcher make his way to the first floor, where he met up with Kaferly. An agent approached Cutcher and Kaferly and asked if they were traveling together. Both acknowledged they were traveling together. An agent asked Kaferly how much cash he was traveling with, and Kaferly said "a couple thousand." The agent asked if he could examine the cash. Kaferly consented.

/////

Consent Judgment of Forfeiture

6. The United States represents that it could also show at a forfeiture trial that when Kaferly's suitcase was searched, the agent located folded wads of cash in approximately $1,000.00 increments, some of which were bound with rubber bands. The agent asked Kaferly if he thought there might be more than "a couple thousand," and Kaferly stated it was more than $9,000.00. The agent asked Cutcher and Kaferly to accompany him to a private room to discuss the legitimacy of the cash. Both consented.

7. The United States represents that it could also show at a forfeiture trial that once in the private room agents removed all the cash from both Cutcher's and Kaferly's bags. Cutcher stated the money from his backpack was intended for gambling and was proceeds from his employment as a server at "Civiche," where he has worked since 2012. He also claimed that some of the money was from his uncle. Cutcher initially stated that the cash in his backpack had recently been withdrawn from his account with Wells Fargo, but then corrected himself, saying approximately $3,500.00 had come from his sock drawer at home. Cutcher does not recall the last time he filed a tax return.

8. The United States represents that it could also show at a forfeiture trial that Kaferly stated his money was proceeds from his business "Shawn Loren" shoe design, where he has worked since 2010. Kaferly claims to have several bank accounts, but the cash in his bag had been kept in a safe in his house so that his girlfriend would not take it. Kaferly said he planned to use the money for gambling.

9. The United States represents that it could also show at a forfeiture trial that the two sums of defendant currency were presented separately to drug detection dog, "Bosa," by a Sacramento County Sheriff's Detective. The detective advised that Bosa positively alerted to the odor of narcotics on both sums of defendant currency.

10. The United States could further show at a forfeiture trial that the defendant currency is forfeitable to the United States pursuant to 21 U.S.C § 881(a)(6).

11. Without admitting the truth of the factual assertions contained above, Andrew James Cutcher and Shawn Loren Kaferly specifically denying the same, and for

3

the purpose of reaching an amicable resolution and compromise of this matter, Andrew James Cutcher and Shawn Loren Kaferly agree that an adequate factual basis exists to support forfeiture of the defendant currency.  Andrew James Cutcher and Shawn Loren Kaferly hereby acknowledge that they are the sole owners of the defendant currency, and that no other person or entity has any legitimate claim of interest therein.  Should any person or entity institute any kind of claim or action against the government with regard to its forfeiture of the defendant currency, Andrew James Cutcher and Shawn Loren Kaferly shall hold harmless and indemnify the United States, as set forth below.

12. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355, as this is the judicial district in which acts or omissions giving rise to the forfeiture occurred.

13. This Court has venue pursuant to 28 U.S.C. § 1395, as this is the judicial district in which the defendant currency was seized.

14. The parties herein desire to settle this matter pursuant to the terms of a duly executed Stipulation for Consent Judgment of Forfeiture.

Based upon the above findings, and the files and records of the Court, it is hereby ORDERED AND ADJUDGED:

15. The Court adopts the Stipulation for Consent Judgment of Forfeiture entered into by and between the parties.

16. Upon entry of this Consent Judgment of Forfeiture, $3,075.00 of the Approximately $6,150.00 in U.S. Currency seized from Andrew James Cutcher and $4,590.00 of the Approximately $9,180.00 seized from Shawn Loren Kaferly together with any interest that may have accrued on the entire amount seized, shall be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6), to be disposed of according to law.

17. Upon entry of this Consent Judgment of Forfeiture, but no later than 60 days thereafter, $3,075.00 of the Approximately $6,150.00 in U.S. Currency seized from Andrew James Cutcher and $4,590.00 of the Approximately $9,180.00 seized from

/////

Shawn Loren Kaferly, shall be returned to potential claimants Andrew James Cutcher and Shawn Loren Kaferly, through their attorney Erica C. Mirabella.

18. The United States of America and its servants, agents, and employees and all other public entities, their servants, agents and employees, are released from any and all liability arising out of or in any way connected with the seizure or forfeiture of the defendant currency. This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said seizure or forfeiture, as well as to those now known or disclosed. Claimants waived the provisions of California Civil Code § 1542.

19. No portion of the stipulated settlement, including statements or admissions made therein, shall be admissible in any criminal action pursuant to Rules 408 and 410(a)(4) of the Federal Rules of Evidence.

20. All parties will bear their own costs and attorney's fees.

21. Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court enters a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, that there was reasonable cause for the seizure of the above-described defendant currency.

IT IS SO ORDERED

DATED: August 25, 2014.

_____
UNITED STATES DISTRICT JUDGE

5